1

2          *POSTED ON WEBSITE*

3          *NOT FOR PUBLICATION*

4

5          **UNITED STATES BANKRUPTCY COURT**

6          **EASTERN DISTRICT OF CALIFORNIA**

7

8

9

In re                                          )     Case No.  20-20175-E-11
10                                             )     Docket Control No. UST-1
HERBERT EDWARD MILLER,                         )
11                                             )
                    Debtor.                    )
12    _____ )

13

14    **This Memorandum Decision is not appropriate for publication.**
      **It may be cited for persuasive value on the matters addressed.**

15

16          **MEMORANDUM OPINION AND DECISION**
            **GRANTING MOTION TO DISMISS CHAPTER 11 CASE**

17          Herbert Miller, the Debtor and serving as the Debtor in Possession ("Debtor Herbert Miller"),

18    commenced this voluntary Chapter 11 case on January 13, 2020 ("2020 Case"), and has served as

19    the debtor in possession since the commencement of this bankruptcy case.  This is not the Debtor

20    Herbert Miller's first or second recent bankruptcy case, he having filed and had dismissed three prior

21    cases since March 6, 2013.  Debtor Herbert Miller has a fourth prior case, a Chapter 7 case that he

22    filed September 4, 2009 ("2009 Case"), in which he was granted a discharge.  That case was

23    reopened in 2015 for the Chapter 7 Trustee to administer an undisclosed pre-petition judgment and

24    judgment lien of the Debtor Herbert Miller that was property of the Chapter 7 bankruptcy estate. The

25    court discusses Debtor Herbert Miller's personal cases below.

26          On July 28, 2020, the United States Trustee, Tracy Hope Davis ("U.S. Trustee"), filed this

27    Motion seeking dismissal of the Chapter 11 case pursuant to 11 U.S.C. § 1112(b)(1) and the

28    imposition of a one-year bar against filing a new case pursuant to 11 U.S.C. § 349(a).  Motion,

Dckt. 108.[1]  The court summarizes the Motion to Dismiss as follows.

The U.S. Trustee asserts that the Debtor Herbert Miller has used multiple bankruptcy filings in an effort to stave off foreclosures on properties by creditors.  The U.S. Trustee goes all the way back to 2009 and identifies twelve different bankruptcy cases that either Debtor Herbert Miller filed (or was identified on the pleadings as filing) or that were filed for an entity related to Debtor Herbert Miller. Of the twelve, ten of those cases were dismissed with no bankruptcy plan having been confirmed.  The properties that are the subject of this 2020 Case are not indicated in the related entity cases, but are included in Debtor Herbert Miller's three prior personal bankruptcy cases.

### REVIEW OF PRIOR BANKRUPTCY CASES
### FILED BY DEBTOR HERBERT MILLER
### AND
### CASES ASSERTED TO BE RELATED TO DEBTOR HERBERT MILLER

The court now reviews the twelve bankruptcy cases identified by the U.S. Trustee and reviews what appears from the dockets in those cases.  First, the court summarizes the bankruptcy cases filed by  Debtor Herbert Miller himself.

**Debtor Herbert Miller**
**Prior Cases**

      **A.**      **Herbert Miller - Chapter 7 Case 09-39991, E.D. Cal. Bankruptcy (2009 Case)**

              1.      Case Filed.................September 17, 2009

                      a.      Debtor Herbert Miller represented by Gregory Flahive, Esq.

              2.      Discharge Entered...........................March 10, 2010

              3.      Schedule A; 09-39991, Dckt. 30; lists the following real property owned by Debtor as of the commencement of the 2009 bankruptcy case:

                      a.      305 Hilton Drive, Applegate, CA (listed as an asset in the 2020 Case now before the court)

                      b.      19696 Shasta Street Lakehead, CA

                      c.      11356 Alta Mesa E. Road, Wilton, CA  (listed as an asset in the 2020 Case now before the court)

---

[1]  This Motion was filed and set for hearing as provided in Local Bankruptcy Rule 9014-1(f)(1), with thirty-seven days notice provided.  Sufficient Notice was provided.  The final hearing on the Motion was conducted on October 15, 2020.

Debtor's Chapter 7 case would appear to have been an uneventful proceeding, but for a pre-petition judgment that was secured by a pre-petition judgment lien (recorded in the amount of $43,479.00) that Debtor Herbert Miller had obtained but failed to disclose on his Chapter 7 bankruptcy schedules.

The Chapter 7 Trustee reopened Debtor's 2009 Chapter 7 case in 2015 to administer the undisclosed asset.[2]

**B.     Herbert Miller - Chapter 11 Case 13-23040, E.D. Cal. Bankruptcy ("2013 Case")**

1.     Case Filed.....................March 6, 2013

    a.     Debtor in the 2013 Case represented by Gilbert E. Maines, Esq.

2.     Case Dismissed.....................................December 2, 2015

    a.     The case was dismissed based on a Motion filed by JPMorgan Chase Bank, N.A. and CitiMortgage, Inc.  13-23040; Motion, Dckt. 135. The court's Order dismissing the case imposed the 11 U.S.C. § 109(g) 180 day bar on filing another case.  *Id.*; Order, Dckt. 148.

3.     Amended Schedule A; *Id.*, Dckt. 26; lists the following real property owned by Debtor as of the commencement of the 2013 case:

    a.     305 Hilton Drive, Applegate, CA  (listed as an asset in the 2020 Case now before the court)

    b.     11356 Alta Mesa E. Road, Wilton, CA  (listed as an asset in the 2020 Case now before the court)

4.     Schedule I filed by Debtor states that his income as of the March 19, 2019 filing of the Chapter 11 case consisted of:

    a.     $3,000.00 a month net income from property and $3,500.00 wages as the manager of Sharif Jewelers.  *Id.*; Dckt. 1 at 24.

5.     The Statement of Financial Affairs filed by Debtor states:

---

[2] No opposition was filed to the Chapter 7 Trustee's 2016 Motion to approve the settlement with the state court judgment debtors on the pre-petition judgment that was property of the Chapter 7 estate.  In administering that asset, the Chapter 7 Trustee recovered $25,373.11 for the Chapter 7 bankruptcy estate.  This was seventy-one percent (71%) of the total net proceeds from the sale of the property encumbered by the judgment lien that was property of the bankruptcy estate. *Id.*; Motion and Order, Dckts. 69, 76.

             a.      $8,000.00 gross income in 2013,

             b.      $24,000.00 income in 2012, and

             c.      $32,500.00 in 2011. *Id*. at 28.

6.      Debtor filed a Motion to Vacate the dismissal of the 2013 Case. The court denied the requested relief, making detailed findings. *Id*.; Civil Minutes, Dckt. 169.

**C.**      **Herbert Miller - Chapter 13 Case 18-26373, E.D. Cal. Bankruptcy ("2018 Case")**

1.      Case Filed........................October 9, 2018

             a.      Debtor in the 2018 Case filed the Chapter 13 case in *pro se*.

2.      Case Dismissed...................................November 7, 2018

             a.      Case was dismissed due to Debtor failing to timely file the required documents of a debtor on the commencement of a bankruptcy case (the time having been extended by the court). 18-26373; Order Dismissing, Dckt. 23.

3.      Schedule A; *Id*., Dckt. 13; lists the following real property owned by Debtor as of the commencement of the 2013 case:

             a.      11155 Shadow Ct, Auburn, CA (listed as an asset in the 2020 Case now before the court)

             b.      18414 North East 391st Street, Amboy, WA

4.      Amended Schedule I filed by Debtor states that his income as of the March 19, 2019 filing of the Chapter 11 case consisted of:

             a.      $1,500.00 a month net income from operation of his business and property. *Id*.; Dckt. 56 at 30-31.

5.      The Amended Statement of Financial Affairs filed by Debtor states:

             a.      $4,500.00 income in 2018,

             b.      $17,500.00 income in 2017, and

              c.      $17,500.00 in 2016. *Id*., Dckt. 58 at 2.

6.      Motion to Vacate Dismissal and Motion to Convert Case

             a.      On January 9, 2020, Judson Henry, Esq. (Debtor's attorney in the 2020 Case) appeared in the 2018 Case for Debtor, filing a Motion to Vacate the Dismissal. *Id*; Motion, Dckt. 30.

                    (1)      The court denied the Motion to Vacate the Dismissal. *Id*.; Civil Minutes, Dckt. 59.

b.  On February 28, 2020, Judson Henry, Esq. filed a Motion to Convert the case from one under Chapter 13 to Chapter 11. *Id*.; Motion, Dckt. 47. Debtor sought the conversion rather than commencing a new case, having subsequently (presumably with the assistance of counsel) recognized that Debtor Herbert Miller's debts exceeded the limits imposed by 11 U.S.C. § 109(e).

    (1)  The court denied the Motion to Convert the case, making detailed findings in the Civil Minutes. *Id*., Dckt. 60.

**D.  Herbert Miller - Chapter 11 Case 19-23392, E.D. Cal Bankruptcy ("2019 Case")**

1.  Filed...................May 29, 2019

a.  Debtor in the 2019 Case represented by Allen Hassan, Esq.

2.  Dismissed................................July 15, 2019

a.  The case was dismissed pursuant to an Order to Show Cause due to Debtor's failure to pay the $1,717.00 filing fee. 19-23392; OSC, Order, Dckts. 20, 35.

3.  Amended Schedule A; *Id*., Dckt. 26; lists the following real property owned by Debtor as of the commencement of the 2019 case:

a.  3252 Rayall Court, Loomis, CA

b.  18414 NE 391st Street, Amboy, WA

4.  Schedule I filed by Debtor states that his income as of the May 29, 2019 filing of the Chapter 11 case consisted of:

a.  $1,500.00 a month net income from operation of his business and property. *Id*.; Dckt. 21.

5.  The Statement of Financial Affairs filed by Debtor states:

a.  There was no income for Debtor in the first five months of 2019 (the fields left blank),

b.  $4,500.00 income in 2018, and

c.  $17,500.00 income in 2017. *Id*.; Dckt. 21 at 39.

The U.S. Trustee then directs the court to eight other bankruptcy cases which are stated to be related to Debtor Herbert Miller. At oral argument, Counsel for Debtor Herbert Miller asserted that for some of these, they were filed by others in the business and not something that Debtor Herbert Miller was aware of.

///

**Cases Asserted to Being**
**Related to Debtor Herbert Miller**

    **E.**       **Moreno Real Estate, LLC, Chapter 11 Case No. 19-27515, E.D. Cal. Bankruptcy**

        1.    Filed..............................December 5, 2019

            a.    Filed "*In Pro Se*"

            b.    Petition signed by Keith Wenger, as "Agent for Service of Process."

        2.    Dismissed..............................December 31, 2019

            a.    Dismissed for failure to file documents. 19-27515; Order, Dckt. 26.

        3.    Debtor states having an 80% ownership interest of Moreno Estates, LLC on Amended Schedule A/B in the current bankruptcy case. Dckt. 79 at 20. No interest in this entity was disclosed on the original Schedules filed by Debtor in this case (Dckt. 22) or in his prior cases.

        4.    The address for Acres Imperial, LLC is stated to be 203 Gunston Court, El Dorado Hills, California.

            The Gunston Court address is not included in any of Debtor Herbert Miller bankruptcy cases. However, in the Amended Schedule A/B and the Amended Statement of Financial Affairs in the 2019 Case, Debtor Herbert Miller disclosed an 80% ownership of an entity named 203 Gunston, LLC. 19-23392; Amended Schedule A/B, Dckt. 21 at 7.

    **F.**       **Acres Imperial, LLC, Chapter 11 Case No. 19-27917, E.D. Cal. Bankruptcy**

        1.    Filed..............................December 12, 2019

            a.    Filed "*In Pro Se*"

                (1)    The Petition is signed by Herb E. Reichle, as "Authorized Agent for Acres Imperial."

        2.    Dismissed...................................January 14, 2020

            a.    Dismissed for failure to file documents. 19-27917; Order, Dckt. 19.

        3.    The address for Acres Imperial, LLC is stated to be 203 Gunston Court, El Dorado Hills, California.

        4.    Debtor states having an 80% ownership interest of Acres Imperial, LLC on Schedule A/B filed in the current case (Dckt. 22).

    **G.**      **Acres Imperial, LLC, Chapter 11 Case No. 20-20661, E.D. Cal. Bankruptcy**

        1.    Filed..............................February 6, 2020

            a.    Filed "*In Pro Se*"

                 (1)    Petition signed by Herb E. Reichle, as "Authorized Agent for

Acres Imperial."

2.   Dismissed....................................February 20, 2020

   a.   Dismissed for failure to file documents.  20-20661; Order, Dckt. 17.

3.   The address for Acres Imperial, LLC is stated to be 203 Gunston Court, El Dorado Hills, California.

4.   Debtor states having an 80% ownership interest of Acres Imperial, LLC on Schedule A/B filed in the current case (Dckt. 22).

**H.   Abacus Investment Group, Inc., Chapter 11 Case No. 17-05422 M.D. Fla. Bankruptcy**

1.   Filed............................June 22, 2017

   a.   Represented by Joel S Treuhaft, Esq.

   b.   Principal Place of Business stated to be 1115 Shadow Court, Auburn, California.  M.D. Fla. 17-05422; Petition, Dckt. 1 at 1.

      (1)   The 1115 Shadow Court address is Debtor Herbert Miller's stated residence in the case now before this court.

   c.   The signature on the Petition is the typed name "Herb Miller."

   d.   Debtor Herbert Miller states having an 80% ownership interest of Acres Imperial, LLC on Original and Amended Schedule A/B filed in the current case (Dckts. 22, 79).

**I.   Abacus Investment Group, Inc., Chapter 11 Case No. 17-27936 E.D. Cal Bankruptcy**

1.   Filed............................December 5, 2017

   a.   Represented by Stanley Berman, Esq.

   b.   Principal Place of Business stated to be 1115 Shadow Court, Auburn, California (which is Debtor Herbert Miller's stated residence). 17-27936; Petition, Dckt. 1 at 1.

   c.   The signature on the Petition is the typed name "Herbert E. Miller," as the CEO.[3]

2.   Debtor states having a 70% ownership interest of Abacus Investment Group, Inc. on Original and Amended Schedule A/B filed in the current case

---

[3]  Though not presented in connection with the present Motion, if it is disputed that the "Herbert E. Miller" signing the Petition in the Abacus Eastern District of California case, given that attorney Stanley Berman is located in the Eastern District of California, the U.S. Trustee confirming the identity of the person alleged to have falsely signed the multiple bankruptcy pleadings should be relatively easy.

7

(Dckts. 22, 79).

3.    With respect to Debtor Herbert Miller in this case having notice of the California bankruptcy case for Abacus Investment Group, Inc., various documents were served on Abacus Investment Group, Inc, 1115 Shadow Court, Auburn, California (the residence of Debtor Herbert Miller in the case now before this court) by the Bankruptcy Noticing Center or the U.S. Trustee. See, for example, *Id*., Dckts. 7, 8, 16, 18, 27, 29, 43, 47.

4.    Dismissed.....................................December 26, 2017

    a.    The case was dismissed due to the failure to file documents. *Id*; Order, Dckt. 17.

**J.    Abacus Investment Group, Inc., Chapter 11 Case No. 17-10224 M.D. Fla. Bankruptcy**

1.    Filed............................December 9, 2017

    a.    Represented by Joel S Treuhaft, Esq.; Peter B. Berkman, Esq.

    b.    Principal Place of Business stated to be 1115 Shadow Court, Auburn, California (which is Debtor Herbert Miller's stated residence). M.D. Fla. 17-10224; Petition, Dckt. 1 at 1.

    c.    The signature on the Petition is the typed name "Donna Steenkamp," as the Chief Financial Officer.

2.    Debtor Herbert Miller states having an 80% ownership interest of Acres Imperial, LLC on Original and Amended Schedule A/B filed in the current case (Dckts. 22, 79).

3.    On the Statement of Financial Affairs, the identities of the officers, directors, and controlling shareholders of Abacus Investment Group, Inc. are not disclosed. *Id*. at 29.

4.    On the Amended Statement of Financial Affairs, the officers are disclosed, with the following persons identified:

    a.    Herb Miller, 1115 Shadow Court, Auburn, California (Residence of Debtor Herbert Miller in the case now before this court); 100% ownership of stock, and Chief Executive Officer.

    b.    Cameron Miller, 11155 Shadow Court, Auburn, California; Secretary. (A Cameron Miller, identified as Debtor Herbert Miller's son, has appeared in the case now before this court.)

    c.    Donna Steenkamp, CFO. *Id*., Dckt. 30 at 4.

5.    With respect to Debtor Herbert Miller in this case having notice of the Florida bankruptcy case for Abacus Investment Group, Inc., various documents were served on Abacus Investment Group, Inc, 1115 Shadow Court, Auburn, California (the residence of Debtor Herbert Miller in the case now before this court) by the Bankruptcy Noticing Center or the U.S. Trustee.

See, for example, *Id*., Dckts. 9, 10, 11, 12, 14, 27, 46, 105, 124, 125, 126, 142, 150, 154, 157, 161, 162, 167, 191.

6. Converted to Chapter 7....................................January 24, 2019

**K. Hillside Holdings, Inc., Chapter 11 Case 18-20298, E.D. Cal. Bankruptcy**

1. Filed.......................January 19, 2018

  a. Filed "*In Pro Se*"

  b. Principal Place of Business stated to be 1115 Shadow Court, Auburn, California (which is Debtor Herbert Miller's stated residence). 18-20298; Petition, Dckt. 1 at 1.

  c. The signature on the Petition is a handwritten "Herb Miller," "*Pro Se*."

2. Debtor Herbert Miller does not state having any interest on his Schedules filed in the current case in an entity known as Hillside Holdings, Inc. (Dckts. 22, 79).

3. Dismissed................................................January 31, 2018

  a. The court issued an Order to Show Cause why the case should not be dismissed due to the corporate debtor not being legally able to file a bankruptcy in *pro se*, and issued an order dismissing the case pursuant thereto. *Id*.; OSC and Order, Dckts. 7, 18.

  b. Dismissal as a bad faith filing. The court's ruling on the Motion to Dismiss is stated in an audio recording that is included on the Docket. No transcript of the hearing has been prepared. *Id;* Dckt. 16. On the recording a person appears and engages in a discussion with the judge:

    (1) The person identifies himself as "Herb Miller."

    (2) "Herb Miller" advises the court that a law firm has been engaged but no attorney has been assigned to that debtor.

    (3) "Herb Miller" advises the court that there is one creditor, and the sole asset listed on the schedules was owned by two elderly persons, the property was transferred into Hillside Holdings, Inc., and the two elderly people remain in possession of the property.

    (4) "Herb Miller" is heard to say that the argument is that "they" dispute that Wells Fargo has any interest in the property that has been transferred into Hillside Holdings, Inc.

    (5) The bankruptcy judge expressly states that he does not find the bankruptcy case filed for Hillside Holding, Inc. to have

been filed in good faith.[4, ENDNOTE 1.]

4.     With respect to Debtor Herbert Miller in this case having notice of the bankruptcy case for Hillside Holding, Inc., various documents were served on Hillside Holdings, Inc., 1115 Shadow Court, Auburn, California (the residence of Debtor Herbert Miller in the case now before this court) by the Bankruptcy Noticing Center or the Court. See, for example, *Id.*, Dckts. 8, 9, 13, 19, 20, 21.

**L.     M.D. & A. Holding Company, Inc., Chapter 11 Case 18-13264, D. Nev. Bankruptcy**

1.     Filed........................June 4, 2018

  a.     Represented by Rena M. McDonald, Esq.

  b.     Principal Place of Business stated to be 1115 Shadow Court, Auburn, California (which is Debtor Herbert Miller's stated residence).  Nev. 18-13264; Petition, Dckt. 1 at 1.

  c.     The signature on the Petition is a typewritten "Herb H.E. Miller."

  d.     A Board Resolution for the filing of the bankruptcy case.  It is signed by a "Jon Lee as Power of Attorney for Herb E. Miller, Chief Executive Officer of M.D. & A. Holding Company."  *Id.*; Dckt. 15.

2.     Debtor Herbert Miller does not state having any interest in M.D. & A. Holding Company, Inc. on his Schedules filed in the current case (Dckts. 22, 79).

3.     Dismissed......................................................October 11, 2018

---

[4] In his Declaration, Debtor Herbert Miller testifies that with respect to the Hillside Holdings, Inc. bankruptcy case, "he may have" (apparently filed the Hillside bankruptcy case). Declaration, ¶6, p. 2:25; Dckt. 127.  Debtor Herbert Miller states that, as he recalls, the Hillside Holdings, Inc. bankruptcy case would have been filed to reorganize a condominium project in Las Vegas, Nevada.  *Id.*  He believes that the case filed in California would have been quickly dismissed and the case refiled in Nevada.  *Id.*

In End Note 1 to this Decision, the court reviews information from its files, PACER information from the District of Nevada that no bankruptcy case was filed for such entity in that District, and information about "Hillside Holdings, Inc." from the California Secretary of State website.  This information about Hillside Holdings, Inc. from the Secretary of State website has not been introduced as evidence for this matter and is not used by the court in rendering this decision.

However, it is information that the U.S. Trustee or Department of Justice may want to review in light of Debtor Herbert Miller stating that bankruptcy cases are being filed using his name without his knowledge or authorization, and it may be that the name "Hillside Holdings, Inc." was used to file a bankruptcy case for an entity that does not exist.

a.     The court issued the order dismissing the case pursuant to a Motion to Dismiss filed by M.D. & A. Holding Company, Inc., the bankruptcy debtor in the Nevada case. *Id*.; Motion, Order, Dckts. 17, 21.

4.     With respect to Debtor Herbert Miller in this case having notice of the bankruptcy case for M.D. & A. Holding Company, Inc. in the Nevada Bankruptcy Court, various documents were served on M.D. & A. Holding Company, Inc., at 1115 Shadow Court, Auburn, California (the residence of Debtor Herbert Miller in the case now before this court) by the Bankruptcy Noticing Center. See, for example, *Id*., Dckts. 7, 8, 23.

With the exception of listing Debtor Herbert Miller's residence as the business location for these various asserted related entities, it appears that the various entities were mostly single asset entities that did not state having any interest in the properties that Debtor Herbert Miller lists on the Schedules in this 2020 Case.

Additionally, Debtor Herbert Miller testifies that he was unaware of some of these bankruptcy cases being filed for entities that he owned or in which he has an interest. Declaration, Dckt. 127.

### U.S. TRUSTEE ASSERTION THAT DEBTOR HERBERT MILLER FAILED TO DISCLOSE ALL HIS ASSETS ON THE SCHEDULES

The U.S. Trustee asserts that Debtor Herbert Miller has not disclosed his interests in Hillside Holdings, Inc. or M.D. & A. Holding Company Inc. on his Amended Schedules and Statement of Financial Affairs in this case. The U.S. Trustee challenges Debtor Herbert Miller not stating an interest in Finley and Diamond, Inc., of which he is listed as an officer and director.

The U.S. Trustee challenges Debtor Herbert Miller's now listed on Amended Schedule I (Dckt. 37, filed on May 5, 2020) monthly income of $8,500.00, where Debtor Herbert Miller states on the Statement of Financial Affairs that his income for the entire 2019 year was only $14,000.00.

The U.S. Trustee states Debtor Herbert Miller failed to accurately disclose income or expenses, implicating bad faith acting. *See In re Cortez*, 349 B.R. 608, 614-15 (Bankr. N.D. Cal. 2006). Debtor Herbert Miller stated he owned three real properties on his Amended Schedule A/B. He also stated on his Amended Schedule J that he pays insurance on these properties. However, at the Meeting of Creditors, Debtor Herbert Miller admitted that they were each foreclosed in 2018 and he does not have insurance on the properties.

11

The U.S. Trustee argues that at the Meeting of Creditors, Debtor Herbert Miller testified that the real estate business was premised upon locating distressed properties and attempting to obtain concessions from the mortgage holders, by challenging the validity of the related deeds of trust and assignments. Further, that Debtor Herbert Miller "admitted" that Debtor Herbert Miller's business entities filed for bankruptcy merely for the purpose of "get[ting] them on their automatic stay for that the banks would have to prove how they became a creditor or got it and what they paid for it."

The U.S. Trustee filed the Declaration of Carla K. Cordero, U.S. Trustee's Bankruptcy Auditor/Analyst, to provide testimony to properly authenticate the various exhibits presented by the U.S. Trustee in support of the factual grounds asserted. Declaration, Dckt. 110.

On May 6, 2020, Debtor Herbert Miller filed Amended Schedule A/B in which he disclosed a number of corporations and limited liability companies in which he had an interest. Most of these entities had not been disclosed not only on the original schedules filed under penalty of perjury in this 2020 Case, but in the Schedules filed under penalty of perjury by Debtor Herbert Miller in his prior bankruptcy cases.

The entities listed on the Amended Schedule A/B filed on May 6, 2020, Dckt. 79, by Debtor Herbert Miller are the following:

| Entity | % of Ownership | Value | Whether Disclosed Prior to 2020 Amended Schedules (Dckt. 79) |
|---|---|---|---|
| Acres Imperial, LLC | 80% | Unknown | Yes 2020 (Dckt. 22) |
| People's Choice Home Loans, Inc. | 50% | $0 | No |
| Palo Alto Mortgage Company | 80% | $0 | No |
| VRAD Investments, LLC | 80% | $0 | No |
| S360 Granite Lakes, LLC | 50% | $0 | No |
| Advanced Legal Systems, Inc. | 50% | $0 | No |
| New Century Mortgage Corp. | 80% | $0 | No |
| Mount Washington Investments, LLC | 80% | $0 | No |
| Rancho Monterey, LLC | 50% | $0 | No |

| Weinstein, Talbot & Perry, LLP | 50% | $0 | No |
|---|---|---|---|
| WMC Mortgage, LLC | 50% | $0 | No |
| AC International Corp. | 50% | $0 | No |
| Baypoint Mortgage, Inc. | 80% | $0 | No |
| Sterling 16, LLC | 50% | $0 | No |
| Ownit Mortgage Solutions, Inc. | 80% | $0 | No |
| Schmook Ranch, LLC | 50% | $0 | No |
| Novastar Mortgage, Inc. | 80% | $0 | No |
| Kazi Financial Group, Inc. | 50% | $0 | No |
| Encore Credit Corporation | 80% | $0 | No |
| Calibar Investment Group, LLC | 100% | $0 | No |
| Slo Brew Holding Company, LLC | 80% | $0 | Yes (2020, Dckt. 22) |
| Moreno Real Estate, LLC | 80% | $0 | Yes (2020, Dckt. 22) |
| Abacus Investment Group, Inc. | 70% | $0 | Yes (2019, 19-23392; Dckt. 21) |
| Chino - Whistler, LLC | 50% | $0 | Yes (2019, 19-23392; Dckt. 21) |
| Palisades - Earl, LLC | 20% | $0 | Yes (2019, 19-23392; Dckt. 21) |

In the proposed Disclosure Statement, Debtor Herbert Miller states that all of his entities are now "defunct" and have "no prospects for future productive business activity." Disc. Stmt., p. 17:23-26; Dckt. 186.

However, included at the end of the Amended Statement of Financial Affairs, Debtor Herbert Miller states under penalty of perjury that many of the above businesses continue to exist. Dckt. 79 at 49, 52-57.

Not included on Amended Schedule A/B in the 2020 Case is another entity listed on Schedule A/B under penalty of perjury in Debtor Herbert Miller's 2019 case – 203 Gunston, LLC. 19-23392; Dckt. 21. The name of this entity is the same as the number and street name given for Acres Imperial, LLC entity which Debtor Herbert Miller discloses in his 2020 case schedules.

13

## OPPOSITION OF DEBTOR HERBERT MILLER

On August 20, 2020, Debtor Herbert Miller filed an Opposition that is supported by two Declarations. Dckts. 126, 127, 128. The Opposition begins with the assertion that the U.S. Trustee states no grounds for which any possible relief could be based. Debtor Herbert Miller then asserts that all of the law cited by the U.S. Trustee was inapplicable to this Chapter 11 case as they only relate to Chapter 13 cases. The court summarizes some of the further points made in opposition.

Debtor Herbert Miller asserts that the Motion was not properly served, though Debtor Herbert Miller has filed an extensive opposition. The Opposition having been filed and the issues throughly briefed and argued, service is proper. Further, that the U.S. Trustee has not articulated the "legal standard" by which the court will properly apply the law.

Debtor Herbert Miller then accuses the U.S. Trustee of articulating "a very distorted narrative of the actual facts," and further that the U.S. Trustee has engaged in outright falsity.

Debtor Herbert Miller disputes that he is a "serial filer," has good faith reasons for the cases filed, and really has had only two cases in the past ten years.

Debtor Herbert Miller asserts that the various alleged "related entity" cases were filed by other persons, improperly using Debtor Herbert Miller's name.

With respect to his income, it is argued that COVID-19 causes the inconsistency in dollar amounts. The "reasonableness" of the expenses challenged by the U.S. Trustee are also asserted to be "COVID-19" reasonable.

In looking back through the prior four bankruptcy cases, it appears that Debtor Herbert Miller has had ongoing, multi-year serious income challenges. The actual income information being stated on the Schedule I and prior two year pre-petition income the Statement of Financial Affairs for the 2020 Case, 2019 Case, 2018 Case, and the 2013 Case reaching back nine years prior to the filing of the 2020 Case, is:

///

///

///

///

| Case | Schedule I Income | Case Pre-Petition Year to Date and two Prior Years Gross Income |
|------|-------------------|----------------------------------------------------------------|
| 2013 Case Chapter 11 13-23040 | $3,000.00 a month net income from property and $3,500.00 wages as the manager of Sharif Jewelers. 13-23040; Dckt. 1 at 24. | $8,000.00 gross income in 2013, $24,000.00 income in 2012, and $32,500.00 in 2011. *Id*. at 28. |
| 2018 Case Chapter 13 18-26373 | $1,500.00 a month net income from operation of his business and property. 18-26373; Dckt. 56 at 30-31. | $4,500.00 income in 2018 $17,500.00 income in 2017, and $17,500.00 in 2016. *Id.*, Dckt. 58 at 2. |
| 2019 Case Chapter 11 19-23392 | $1,500.00 a month net income from operation of his business and property. *Id*.; Dckt. 21. | No income for Debtor in the first five months of 2019 (the fields left blank), $4,500.00 income in 2018, and $17,500.00 income in 2017. *Id.*; Dckt. 21 at 39. |

The 2013, 2018, and 2019 Case information well predate the COVID-19 disruption in the economy in the Spring of 2020.

With respect to the alleged "bad faith," Debtor Herbert Miller steps up and asserts that the U.S. Trustee is acting in bad faith, making false allegations, and attempting to "manufacture the appearance of what would be a serious failure to disclose."

Debtor Herbert Miller provides his Declaration in opposition to the Motion. Dckt. 127. He testifies that he did not cause the Moreno Real Estate, LLC case to be filed in the Eastern District of California; and did not cause the Acres Imperial, LLC cases filed in the Eastern District of California. Debtor Herbert Miller speculates that a now disbarred attorney may be behind the filing of the Acres Imperial, LLC cases.

He also denies being involved in the M. D. & A. Holding Company, Inc. bankruptcy case,

15

noting that the purported typed signature misspells his name (adding an additional middle initial).

Debtor Herbert Miller testifies that at the time of the initial status conference, "I genuinely believed property insurance had been placed on the three properties involved in my case," but it was only later that he learned that such insurance could not be issued based on Debtor Herbert Miller's claims of ownership based on his assertions that the foreclosure deeds were void.

**DISCUSSION**

The Bankruptcy Code provision at issue is 11 U.S.C. § 1112(b), which is the statutory foundation for the court addressing whether a Chapter 11 case should be dismissed or converted.

> (b)
> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, **the court shall convert** a case under this chapter to a case under chapter 7 **or dismiss** a case under this chapter, <u>whichever is in the best interests of creditors and the estate</u>, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b) (emphasis added). Parsing this language, when cause is shown the court **shall** (not may or might) convert or dismiss the case, or appoint a Chapter 11 trustee. Further, when the court finds that cause exists for relief pursuant to 11 U.S.C. § 1112(b) to dismiss, convert, or appoint a trustee, the court considers the interests of creditors and the estate (which includes a debtor's right to surplus moneys after payment of creditor claims).

Congress provides in 11 U.S.C. § 1112(b)(4) a non-exclusive list of examples of what can constitute cause for purposes of 11 U.S.C. § 1112(b)(1). These items relate to the ability and actual efforts to prosecute a reorganization under Chapter 11 and comply with the Bankruptcy Code and orders of the court.

Questions of conversion or dismissal must be dealt with a thorough, two-step analysis: "[f]irst, it must be determined that there is 'cause' to act[;] [s]econd, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006) (citing *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002)).

Debtor Herbert Miller asserts that the U.S. Trustee's citation of cases, including the Ninth Circuit Court of Appeal Decision in *In re Leavitt*, 171 F.3d 12119, 1224 (9th Cir. 1999), cannot be

considered on the issue of "bad faith" because they are considering bad faith in a Chapter 13 case. Thus, Debtor Herbert Miller contends that the Motion to Dismiss must fail for the failure to provide the court with applicable legal authority.

The court disagrees. While not a binding decision on a discrete point of law, decisions of the Ninth Circuit on bad faith are relevant in considering the law. There is not a "bad faith, you can get away with in Chapter 11," indulgence granted Chapter 11 debtors, individually and serving as debtors in possession with fiduciary duties (exercising the powers and having the obligations of a bankruptcy trustee in administering property of the estate).[5] The court addresses these issues in the context of a Chapter 11 case below.

**Opposition Based On Court Having**
**Determined Good Faith in Extending the**
**Automatic Stay as to Debtor Herbert Miller Personally**

Before proceeding, the court addresses Debtor Herbert Miller's contention that his prior bankruptcy filings and the asserted related cases have already been addressed by this court and cannot properly be considered now. Opposition, p. 6:1-10; Dckt. 126. Such is not the case, with Debtor Herbert Miller overstating what was presented to the court and the scope of a ruling to extend the automatic stay as to a debtor personally as provided in 11 U.S.C. § 362(c)(3)(B).

As the court addressed in its ruling on the Motion to Extend the Stay, termination of the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(A) due to there having been a prior bankruptcy case pending and dismissed within a year of the 2020 Case is a termination of the automatic stay only as to the debtor personally, not as to property of the bankruptcy estate. Civil Minutes, p. 2, third full paragraph; Dckt. 30.

When the case was filed and the Motion to Extend the Stay as to the debtor was filed, Debtor Herbert Miller was prosecuting this case in *pro se*. Motion, Dckt. 10. A review of the Motion and

---

[5] As discussed in 7 Collier on Bankruptcy ¶1108.04:

> Chapter 11 trustees and officers and directors of a debtor in possession are similarly bound by a duty of care. In a case in which no trustee has been appointed, "the trustee's fiduciary obligations also fall upon the officers and managing employees who conduct the debtor in possession's affairs."

Debtor Herbert Miller's Declaration clearly shows that Debtor Herbert Miller blamed the dismissal of his prior case due to incompetent counsel.  Motion, p. 3:4-7, 23-27, Dckt. 10; Declaration, p. 2:3-18; Dckt. 12.  In the Civil Minutes, the court addresses some issues concerning the information in the Schedules, including the failure to list the Internal Revenue Service as a creditor.  Civil Minutes, p. 4; Dckt. 30.

The only matters presented to the court was that there was a prior case and Debtor Herbert Miller blamed his former counsel in the one prior case.

In extending the stay as to Debtor Herbert Miller personally (11 U.S.C. § 362(c)(3)(A) not terminating it as to the bankruptcy estate and all property of the bankruptcy estate), the key factor in extending the stay was that Debtor Herbert Miller's current counsel appeared at the hearing and reported he was substituting in:

> At the January 30, 2020 hearing, Debtor in Possession appeared with counsel who was substituting into this case. Some of the above shortcomings were addressed and Supplemental Schedules I and J shall be filed.

> Debtor has sufficiently demonstrated the case was filed in good faith/rebutted the presumption of bad faith under the facts of this case and the prior case for the court to extend the automatic stay.

*Id*. at 5.  The court did not determine that Debtor Herbert Miller had filed this case in good faith, was prosecuting in it good faith, that he could reorganize under Chapter 11 in good faith, or that cause did not exist to dismiss the case.  Rather, merely that the "presumption of bad faith" for purposes of the automatic stay terminating only as to Debtor Herbert Miller personally due to one prior case having been dismissed had been sufficiently rebutted.

### REVIEW OF PROPOSED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN FILED BY DEBTOR HERBERT MILLER

The court begins with the proposed Disclosure Statement (Dckt. 186) filed by Debtor Herbert Miller to provide accurate, truthful, adequate information, so that creditors can make an informed decision of whether to vote for or against a proposed Chapter 11 Plan.[6]  11 U.S.C. § 1125.  The

------

[6] The court makes an extensive review of the proposed Disclosure Statement and Plan because the present motion before the court is turning on whether Debtor Herbert Miller has filed this case to prosecute a good faith reorganization, or whether the "plan" is to use the bankruptcy

proposed Disclosure Statement was signed by Debtor Herbert Miller on October 13, 2020. Dckt. 186 at 30. The information included in the proposed Disclosure Statement includes:

> Herbert Edward Miller, Debtor-in-Possession, is a self-employed individual who conducts all of his business activities as a sole proprietor. Debtor Herbert Miller currently has no employees.

*Id.*, p. 7:13-15.[7]

The proposed Disclosure Statement continues in describing the business and assets that will be reorganized in Chapter 11:

> The nature of Debtor's businesses is and will be twofold, possibly threefold; namely, (1) independent contractual sales of PPE equipment, (2) income/rental property ownership and management, and (3) [possibly] reentry into the jewelry business (if economic, market, and legal conditions related to the COVID-19 pandemic improve to make this lucrative.

*Id.*, p. 7:15-18.

The proposed Disclosure Statement discusses that the need to file arises from real estate investments involving several identified persons. Debtor Herbert Miller then describes various failures to set up business entities and an intention to acquire financially distressed real estate and turn an eventual profit. *Id.*, p. 7-8.

Debtor Herbert Miller discusses the legal and financial problems relating to his prior financially distressed investments, and his decision not to continue with the persons he had previously entered into business. *Id.*, p. 8. Debtor Herbert Miller then explains that his former business partners were involved in professional basketball and a well known religious organization. *Id.*, p. 9. Debtor Herbert Miller then proceeds to state that improper financial actions were taken by his partners in the distressed real estate investment endeavor, but that there were not any

---

stay in lieu of an injunction and gain access to the federal court system to continue the years of prior and ongoing litigation in state and federal court.

    [7] This statement may be true as of Debtor Herbert Miller's 2020 Case (assuming that his many business entities have failed and are out of business), but not historically, as shown by the at least 25 corporations, limited liability companies, and limited liability partnerships in which Debtor Herbert Miller has 50%, 80%, or in one, 100%, ownership interest. In the Disclosure Statement Debtor Herbert Miller states that all of his entities are now "defunct" and have "no prospects for future productive business activity." Disc. Stmt., p. 17:23-26; Dckt. 186.

1    improper acts by Debtor Herbert Miller.  *Id.*

2        Debtor Herbert Miller concludes the explanation of his pre-petition finances by stating that

3    his three real properties were deeded away from him by "wrongful foreclosures."  *Id.*  But he now

4    will proceed with litigation to address such wrongful foreclosures through the bankruptcy court.[8]

5    **Identification of Creditors and Claims**

6        In the next section of the proposed Disclosure Statement, Debtor Herbert Miller identifies

7    the creditors that are going to be subject to the Chapter 11 Plan of Reorganization.  These are

8    identified as:

9        A.    Class 1a Secured Claim - Collateral 305 Hilton Dr, Applegate, California.  *Id.*,
             p. 11:20-28, 12:1-18.

10
11            1.    Creditor with Secured Claim...............Unknown

12            2.    Debtor Herbert Miller disputes that U.S. Bank, N.A. conducted a non-judicial
                  foreclosure sale in late 2017 - 2018; but title records reveal that a deed of
13                trust exists by which U.S. Bank, N.A. purports to have conducted a
                  nonjudicial foreclosure sale.

14            3.    Debtor Herbert Miller asserts that the deed of trust is void.

15            4.    The Class 1a "Unknown Creditor's" claim will be paid through the plan over
                  a 360 month period with simple interest of 4.25%.

16
17        B.    Class 1b Secured Claim - Collateral 11356 Alta Mesa East, Wilton, California.  *Id.*,
             p. 12:19-28, 13:1-10.

18            1.    Creditor with Secured Claim................Unknown

19            2.    Debtor Herbert Miller disputes that Bayview Loan Servicing, LLC conducted
                  a non-judicial foreclosure sale in late 2017 - 2018; but title records reveal that
20                a deed of trust exists by which Bayview Loan Servicing, LLC purports to
                  have conducted a nonjudicial foreclosure sale.

21
22            3.    Debtor Herbert Miller asserts that the deed of trust is void.

23            4.    The Class 1b "Unknown Creditor's" claim will be paid through the plan over
                  a 360 month period with simple interest of 4.25%.

24        C.    Class 2 Secured Claim - Collateral 11155 Shadow Court, Auburn, California.  *Id.*,
             p. 13:11-28, 14:1-14.

25
26
_____

27        [8]  Not included in this pre-petition history is a summary of the multiple state and federal
    court actions involving Debtor Herbert Miller (discussed *infra*) and these properties, or Debtor
28    Herbert Miller's multiple prior bankruptcy cases.

1.      Creditor with Secured Claim.................Unknown

2.      Debtor Herbert Miller disputes that Wilmington Savings Fund, FSB, as Trustee, conducted a non-judicial foreclosure sale in late 2017 - 2018; but title records reveal that a deed of trust exists by which Bayview Loan Servicing, LLC purports to have conducted a nonjudicial foreclosure sale.

3.      Debtor Herbert Miller asserts that the deed of trust is void.

4.      The Class 2 "Unknown Creditor's" claim will be paid through the plan over a 360 month period with simple interest of 4.25%.

D.      Class 3a Secured Claim - Collateral 2017 Honda Accord Hybrid. *Id.*, p.14:15-25.

      1.      Creditor With Secured Claim......American Honda Corporation

      2.      Amount of Claim.........................$19,089.98

      3.      Payment of Claim........................Not Stated

E.      Class 3b Secured claim - Collateral 2018 Nissan Pathfinder. *Id.*, p. 14:15-28, 15:1-8.

      1.      Creditor With Secured Claim..........Nissan

      2.      Amount of Claim.........................$30,000.00

      3.      Payment of Claim........................Not Stated

F.      Class 4a Assumed[9] Nonpriority General Unsecured Claims. *Id.*, p. 15:9-28, 16:1-2.

      1.      Amount of Assumed Claims..........$3,523,000.00

          a.      This includes the two partners in the distressed real estate investment venture, with claims for $1,000,000 that Debtor Herbert Miller disputes.

          b.      Payment of Claims..........Not Stated

G.      Class 4b General Nonpriority Unsecured Claims. *Id.*, p. 16:3-23.

---

[9] The term "Assumed" for these claims refers to obligation owed to third parties by the distressed real estate investment venture entities of Debtor Herbert Miller and his business partners, but are not obligations for which Debtor Herbert Miller is personally liable.

At present, even though all of the agreements between the investors who provided funds were with Debtor-controlled entities (not Debtor Herbert Miller in his individual capacity) and none included any personal guarantee or "co-signing" by Debtor Herbert Miller, the proposed Plan has the Debtor- in-possession voluntarily "assuming" these obligations that he has no legal obligation to pay the obligations.

Id., p. 9:16-20.

1        1.       Amount of Unsecured Claims........$130,571.16

2        2.       Payment of Claims.....................Not Stated

3    H.    Unclassified Claims

4        1.       Internal Revenue Service. *Id*., p. 16:26-28, 17:1-5.

5               a.      11 U.S.C. § 507(a)(8) priority...............$18,037.18

6               b.      Payment of Claim.................Not Stated

**Property of the Bankruptcy Estate**

The Disclosure Statement continues, disclosing the assets of the bankruptcy estate. *Id*., p. 17-18. The assets as disclosed on Schedules A/B are stated to have a value of $1,494,540.00. However, of this, $1,437,000.00 of value is for the real properties for which Debtor Herbert Miller asserts that other persons are holding void deeds following nonjudicial foreclosures for which he intends to proceed with further litigation and retake title.

The next most significant asset consists of $12,597.00 cash, all of which is claimed as exempt.

Debtor Herbert Miller, a single individual, then lists a value of $39,993.00 for two vehicles. These are the vehicles subject to the secured claims of $49,000.00, so there is no value for the estate in these two vehicles.

For Debtor Herbert Miller's 25+ corporations, limited liability company, and limited liability partnerships now disclosed on Amended Schedule A/B, he confirms that they are all "defunct with no prospects for future productive business activity." *Id*., p. 17:23-25.

The only other assets rolling around in the bankruptcy estate are Debtor Herbert Miller's household goods and personal effects, which he estimates a private party sale value of $4,950.00.

**Litigation Over Alleged Void Foreclosures**

Debtor Herbert Miller states that he has commenced, and will commence a third, adversary proceedings asserting his claims that the alleged deeds from the nonjudicial foreclosures are void. *Id*., pp. 18:15-28, 19:1-12.

Debtor Herbert Miller then discusses possible claims for violation of the automatic stay arising in the current 2020 Case now before the court.

**Summary of Plan of Reorganization**

Debtor Herbert Miller provides a narrative summary of the Plan. He states that he intends to continue his PPE sales and distributions, and rental income property business (which appears to be for the properties which are the subject of the alleged void foreclosures), as well as reentering the jewelry market. *Id.*, p. 22:15-18.

For three of the Secured Claims held by "Unknown Creditors," the unknown creditors will be bound to their secured claims being reamortized over a 360-month period, with a simple 4.25% interest, without being allowed to participate in the confirmation process because they are "unknown." *Id.*, p. 22:27.

For the two creditors having claims secured by Debtor Herbert Miller's vehicles, they will be paid as provided in some future agreement that will be reached by Debtor Herbert Miller, but the proposed Disclosure Statement does not state any actual payment terms for those claims. *Id.*, p. 22:25-27. A review of the Plan discloses that the actual plan treatment is to pay these significantly undersecured claims more than the amount of the actual secured claim (based upon an 11 U.S.C. § 506(a) valuation), but the full amount of the obligations pursuant to the terms of the pre-petition contracts.[10]

For Debtor Herbert Miller's priority tax claims, they are to be paid in full in less than five years under the Plan. *Id.*, p. 23:7-14.

For the General Unsecured Claims, the Disclosure Statement recommends the creditor review the proposed Plan.

**Review of the Proposed Chapter 11 Plan**
**General Unsecured Claim Treatment**

In Article III, Paragraph 3.4a of the proposed Plan, Debtor Herbert Miller provides for the payment as general unsecured contractual claims of the various corporations, limited liability companies, and limited partnership owned by Debtor Herbert Miller. The Plan clearly states that Debtor Herbert Miller is not contractually bound and is not liable, but that he is "**voluntarily** taking

---

[10] Plan, Article III, ¶ 3.3a Class 3a, and ¶3.3b Class 3, pp. 8-9; Dckt. 185.

on personal liability for these claims." Plan, pp. 9:25-27, 10:-2; Dckt. 185 [emphasis added].

Thus, Debtor Herbert Miller makes it clear that the Class 4a Claim "creditors," are not actual creditors as defined in 11 U.S.C. § 101(10), but are created "creditors" for purposes of the proposed Chapter 11 Plan in this case ("Created Creditors"). This creation of creditors is a novel concept. One questions whether Debtor Herbert Miller and his counsel, can in good faith, manufacture Created Creditors, outside those Congress defines as creditors who have rights and interests subject to a bankruptcy plan, to divert monies to and away from creditors to whom Debtor Herbert Miller is legally liable.

For these bankruptcy plan Created Creditors, Debtor Herbert Miller's Plan promises them a dividend equal to 80% of the net revenues, after payment of "total expenses of all types," without any limitation on such expenses taken by Debtor Herbert Miller, for sixty (60) monthly installments. *Id.*, p. 10:8-16. Debtor Herbert Miller's Plan includes a projection that initially these net revenues after any and all expenses of every type, will be $1,000.00 at the start of the Plan and increasing to $4,250.00 in 2022. *Id.* Over a five-year period (assuming $1,000.00 a month for the first two years and $4,250.00 a month for the next three years) it appears that Debtor Herbert Miller is advancing a plan to divert $177,000.00 to these Created Creditors and away from the creditors to which he is legally obligated.

Then for Class 4b Unsecured Claims, these being creditors who have actual unsecured claims based on contract, statute, commonly law, judgment or otherwise for which Debtor Herbert Miller is legally obligated for, there will be only a divided of 50%, with no interest. *Id.*, p. 10:23-25.

**Means for Implementing Plan**

The Disclosure Statement continues, stating that Debtor Herbert Miller will continue his present business operations to implement the Plan. Disc. Stmt., p. 27:22; Dckt. 186. Debtor Herbert Miller has filed *pro forma* projections (the "Projection") with the proposed Disclosure Statement, which are in the form of a Request for Judicial Notice (Dckt. 188).[11]

---

[11] The documents attached to the Request for Judicial Notice are: 1. The Proposed Plan; 2. Proposed Ballot for Accepting or Rejecting; 3. *Pro Forma* Projections for 2020-2022; and 4. September 2020 Monthly Operating Report.

The Projection, Exhibit 3; Dckt. 188; breaks the financial projections into three separate year periods - 2020, 2021, and 2022. The court summarizes each of them by projection year below.

2020 Projection

For 2020, Debtor Herbert Miller projects having the following amounts of gross income:

Commission From Independent Sale .............................................$62,773.00
     (This is substantially generated in Sept-Dec)

Management/Sales Windsor Diamonds..........................................$17,285.00
     (This is spread out through the year)

Social Security Income...................................................................$17,494.00
                                         =======
               Total Gross Income..................................... $97,552.00

To generate the $80,039.00 in income (excluding Social Security) Debtor's total costs of goods and services are only ($6,500.00). Of this, ($5,000.00) was spent in January 2020, and only ($1,500.00) is needed for generating $57,000.00 of income in September through December 2020. Dckt. 188 at 28. There are additional "Misc. business expense" line items, which for the September through December 2020 period total ($3,742.00), with ($3,424.00) being in the month of September 2020.

Debtor Herbert Miller computes having $91,052.00 in 2020 gross profits. *Id.*

For his business and personal expenses in 2020, Debtor Herbert Miller projects having ($58,842.00) in such expenses. *Id.* Of this, only ($14,308.00) is for business expenses, and ($28,733.00) is for Debtor Herbert Miller's "personal expenses."

In reaching his "net profit," Debtor Herbert Miller deducts as an "expense" ($10,500.00) of "adequate protection payments." As discussed below, these are not payments being made to anyone, but are monies that Debtor Herbert Miller proposes to set aside in lieu of obtaining an injunction bond while using the automatic stay rather than obtaining a preliminary injunction in his ongoing legal battles over the three properties in which he disputes the validity of the foreclosure deeds.

Even deducting the "adequate protection payments" that are not paid to a creditor, Debtor Herbert Miller reports having $32,209.00 net profit. *Id.* However, Debtor Herbert Miller states on the 2020 Projection that no income taxes will be owed by either the bankruptcy estate (there being no plan that could be confirmed before the end of 2020) or Debtor Herbert Miller, and that there are no self-employment taxes for his independent sales business. *Id.*

### 2021 Projection

For the 2021 Projection, the finances take off, and Debtor Herbert Miller projects $171,000.00 in Commissions from Independent Sales and $16,500.00 in Social Security income. Dckt. 188 at 29. There is no jewelry income, Debtor's son Cameron Miller testifying that the business has been closed and the premises vacated. Affidavit, Dckt. 168.

To generate the $171,000.00 in Independent Sales Commission, the costs of the goods and services relating thereto are projected to be only ($6,000.00). Dckt. 188 at 29. The other Miscellaneous Business Expenses necessary to generate the $171,000.00 in Independent Sales Commissions are projected to be only ($1,200.00), estimated at only ($100.00) a month. *Id*.

Thus, the expenses necessary to generate $171,000.00 in Independent Sales Commissions are projected by Debtor Herbert Miller to be only ($7,200.00).

Debtor Herbert Miller's major expenses that he lists as an "Operating Expense" is ($63,000.00) in "Adequate Protection Payments." *Id*. Again, these are "payments" not being made to anyone, but moneys set aside in lieu of requiring Debtor Herbert Miller obtaining a preliminary injunction as required by Federal Rule of Civil Procedure 65 and Federal Rule of Bankruptcy Procedure 7065 in his litigation challenging the alleged to be void deeds from the foreclosure sale.

Debtor Herbert Miller does list projected deductions for paying creditors through the plan, professional fees, and U.S. Trustee fees, but does not deduct these in computing possible income taxes. For his total State and Federal income and self-employment taxes, on $107,514.00 in net income (not deducting the Adequate Protection payments not being paid to anyone), Debtor Herbert Miller projects only ($14,400.00) in combined taxes.

### 2022 Projections

For the 2022 Projections, Debtor Herbert Miller shows increased annual gross income growing to $271,440.00, with the increase built on Debtor Herbert Miller counting on $54,940.00 in gross rental income from two of the properties for which he asserts that the foreclosure deeds are void. *Id*. at 30.

Debtor Herbert Miller provides for paying $14,400.00 for income taxes. *Id*. The court does not see a line item for Debtor Herbert Miller's self-employment taxes. Debtor Herbert Miller states

that the tax projections are based on IRS Schedule C net profit. Possibly he has huge losses from his prior business ventures that have failed. If so, such does not create a sense of confidence that a future business venture would be hugely successful.

### NONBANKRUPTCY LITIGATION DEBTOR HERBERT MILLER SEEKS TO BRING TO FEDERAL COURT THROUGH THIS BANKRUPTCY CASE

There has been a significant amount of discussion in this case concerning Debtor Herbert Miller's propensity to commence bankruptcy cases and other proceedings. As discussed above, Debtor Herbert Miller purports to have been unaware of various bankruptcy cases filed for entities in which he held a 50% or 80% interest in. Whether he knew they were being filed, his residence is the address at which the courts, U.S. Trustees, and Bankruptcy Noticing Center mailed notices of those cases, so it is unlikely that he was unaware that his various corporations or limited liability companies were being placed in bankruptcy.

Debtor Herbert Miller has made it clear that he is here in bankruptcy today not to reorganize any existing business, finances, or assets; but to continue in litigation in federal court through the bankruptcy side door for his assertion that deeds from nonjudicial foreclosure sales in 2017 or 2018 are void.

Through various pleadings in this case and the related Adversary Proceedings, the existence of various State and Federal Court litigation and outcomes have been brought to the attention of the court.

Debtor Herbert Miller has argued that to the extent that for any of these State or Federal actions that have been dismissed with prejudice or judgment entered against Debtor Herbert Miller with respect to his assertions that the foreclosure deeds are void, the persons he seeks to litigate with today cannot claim to be in privity with the persons who had the state court action dismissed with prejudice. The court does not review these other judicial proceedings and outcomes for the merits or how they would apply to persons that Debtor Herbert Miller seeks to litigate within 2020, but only to put in context the professed need to reorganize in bankruptcy and the ability of Debtor Herbert Miller to commence and engage in litigation.

In the Amended Statement of Financial Affairs, Debtor Herbert Miller identifies the

following actions as ones that he was involved in at the time this case was filed or during the one

year prior:

    A.    *Hoffler v. Miller et al.*; California Superior Court, County of Los Angeles, Action[12] No. BC720161.

        1.    Breach of Contract, Settlement Agreement

        2.    Pending

    B.    *Goldman & Zwillinger PLLC v. Miller and Hyland*; Arizona Superior Court, Maricopa County, Action No. CV 2018-005181.

        1.    Nature of Case not stated

        2.    Pending

    C.    *Miller v. Deutsche Bank National Trust Company*; Arizona Superior Court, Maricopa County, Action No. CV2017-056018.

        1.    Supplemental Counter Claim by Trustee of Monaco Ventures Trust

        2.    Pending

    D.    *Wilmington Savings Fund v. Homes, Miller, et al.*; California Superior Court, County of Placer, Action No. MCV 00723311.

        1.    Unlawful Detainer and Money Damages

        2.    Pending

    E.    *Law Offices of Allan R. Frumkin, Inc. v. Miller*; California Superior Court, County of Placer, Action No. MCV 0055632.

        1.    Post-Judgment, Enforcement

    F.    *Apex Resources Partners, LLC and Cherrypick Investments, LLC v. Miller*; Florida, Hillsborough County, Action No. 2018-CA-8389.

        1.    Breach of Promise/Deal/Transaction.

        2.    Pending

Dckt. 79 at 43, 51.

    The prior litigation challenging the foreclosures filed by Debtor Herbert Miller and relating

to the persons holding the deeds from the foreclosures include the following.

---

[12]  The court uses the word "action" when identifying the non-bankruptcy litigation rather than "case" to avoid confusion between the various "bankruptcy cases" and the non-bankruptcy lawsuits.

*Miller v. JPMorgan Chase Bank, N.A. et al.*

In the Adversary Proceeding *Miller v. JPMorgan Chase Bank, N.A. et al*, 20-2115, information about other litigation involving Debtor Herbert Miller has been presented to the court.

The first is a Superior Court Action, *Miller v. JPMorgan Chase Bank, N.A., et al.*, California Superior Court Action No. SCV 003 0341. A copy of an Order sustaining Defendants' Demurrer to Debtor Herbert Miller's First Amended Complaint is sustained without leave to amend. 20-2115; Exhibit G, Dckt. 42 at 122.

Exhibit H is a copy of a Judgment of Dismissal, with a filed date stamp of December 3, 2012. The Judgment for Dismissal states that Debtor Herbert Miller's Action was dismissed with prejudice as to JPMorgan Chase Bank, N.A. and California Reconveyance Company. *Id.* at 132.

*Miller v. JPMorgan Chase bank, N.A., as Trustee, and MTC Financial, Inc.*

The second is a Complaint filed in the California Superior Court, County of Placer, or *Miller v. JPMorgan Chase Bank, N.A., as Trustee, and MTC Financial, Inc.*, Action No. SCV 00364517 *Id.* at 205, Exhibit N.

Exhibit O is a copy of the Docket from the United States District Court for the Eastern District of California, No. 16-01593. *Id.* at 301. This was opened upon the removal of the above State Court Action, Action No. SCV 00364517, to the United States District Court for the Eastern District of California.

Exhibit Q is the District Court Judge's order adopting the proposed Findings and Conclusions of the Magistrate Judge and dismissing the action for failure of Debtor Herbert Miller to prosecute the action and comply with orders of the court. *Id.* at 308. The judgment entered on the District Court Judge's Order is provided as Exhibit R. *Id.* at 310.

*U.S. Bank, N.A., as Trustee v. Herbert E. Miller et al.*

The third is a copy of a Judgment for Unlawful Detainer in *U.S. Bank, N.A., as Trustee v. Herbert E. Miller et al.*, California Superior Court, County of Placer, Action MCV 0057652. *Id.* at 372, Exhibit Y. The filed date for the Judgment is September 23, 2017. It states that U.S. Bank, N.A., as Trustee for LSF9 Master Participation Trust is entitled to possession of the real property identified as 305 Hilton Drive, Applegate, California (one of the properties for which Debtor Herbert

1  Miller asserts that the foreclosure deed is void).

2  Exhibit Y is the order of the Superior Court denying Debtor Herbert Miller's motion to set

3  aside the judgment for possession. *Id*. at 377.

4
5  **CAUSE EXISTS TO DISMISS
DEBTOR HERBERT MILLER'S CHAPTER 11 CASE**

6  In reviewing the file in this Chapter 11 case, the court had a fundamental question for

7  Counsel for Debtor Herbert Miller - what is going to be the confirmable Chapter 11 plan of

8  reorganization in this case?  In response, counsel for Debtor Herbert Miller explained that Debtor

9  Herbert Miller's ability to generate revenue increased starting in August 2020, and that it would be

10  reflected in the Monthly Operating Report.  Additionally, that the Chapter 11 Plan will include

11  blocked account adequate protection payments for the parties subject to the automatic stay being

12  used in the related adversary proceedings in lieu of Debtor Herbert Miller obtaining a preliminary

13  injunction pursuant to Federal Rule of Civil Procedure 65 and Federal Rule of Bankruptcy Procedure

14  7056 (and the bond required therefore).

15  An initial point to address is that the court does not reach its conclusions that cause exists

16  to dismiss this case because Debtor Herbert Miller is an individual who does not have a business that

17  he is reorganizing.  As cited in the Opposition, the Supreme Court established that there is no *per*

18  *se* ineligibility for filing a Chapter 11 case by an individual who does not have a business.

19  As is clear from the court's discussion in the foregoing sections, the court has reservations

20  concerning Debtor Herbert Miller's filing of this case and the ability to prosecute it consistent with

21  the requirements for a Chapter 11 case, plan, and reorganization.  *Toibb v. Radloff*, 501 U.S. 157,

22  158 (1991).  There are a number of individuals with no businesses who over the years have filed

23  Chapter 11, reorganized their assets/investments, and increased the value of the property of the

24  bankruptcy estate through the reorganization.  But there must be something to be reorganized and

25  made more valuable through the Chapter 11 case rather than through a Chapter 7 liquidation.  *Id*.,

26  163, 164.  The court's focus is on whether it appears that Debtor Herbert Miller has something to

27  reorganize through Chapter 11.

28  With respect to "cause," as provided in 11 U.S.C. § 1112(b), Collier on Bankruptcy provides

a good summary of what is intended for a "reorganization" through Chapter 11. Collier begins by noting that "it is useful to bear in mind the fundamental purposes and limitations of chapter 11 as they relate to section 1112(b)."  7 Collier on Bankruptcy, ¶1112.04[5] (16th 2020).

[a] Salvaging Viable Business Enterprises and Maximizing the Creditors' Return

As the Supreme Court has observed, chapter 11 embraces the "two recognized policies [of] preserving going concerns and maximizing property available to satisfy creditors."[13] As the House Report states:

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap.

As a general rule, if continuing a particular chapter 11 case would promote the twin goals of preserving viable businesses and maximizing the creditors' return, then the case is probably not a candidate for conversion or dismissal under section 1112(b). **On the other hand, chapter 11 is not a panacea for every debtor in distress. Many troubled businesses are simply not viable and most debtors that enter chapter 11 do not succeed in confirming a chapter 11 plan**. . ., and in some instances, the debtor's assets actually may be put to more valuable use in a different application. In these circumstances, permitting the chapter 11 case to continue may be counterproductive and conversion or dismissal may be warranted.

[b] Providing for Negotiated Accommodation

In evaluating the purposes of chapter 11 as they relate to section 1112(b), it is also important to bear in mind that Congress designed the reorganization process to provide a forum for the negotiated resolution of the debtor's case in a manner that is as accommodating as possible. On the other hand, not every case is capable of bearing the weight of this ideal. **In reality, while the chapter 11 forum provides a medium for negotiation and an opportunity to better accommodate the interests of a broad range of constituents by potentially preserving the value of the debtor as a going concern**, . . .

Recognizing the realities and limitations of chapter 11, one circuit court judge has remarked: "**Reorganization is not a Holy Grail to be pursued at any length**."

---

[13] Collier Footnote 44 citation to:

> *Bank of America Nat' l Tr. & Sav. Ass' n v. 203 N. LaSalle St. P' ship*, 526 U.S. 434, 435, 119 S. Ct. 1411, 1413, 143 L. Ed. 2d 607 (1999); see G. Eric Brunstad, Jr. & Mike Sigal, Competitive Choice Theory and the Broader Implications of the Supreme Court's Analysis in *Bank of America v. 203 North LaSalle Street Partnership*, 54 Bus. Law. 1475, 1483 n.26 (1999) (discussing the purposes of chapter 11).

Similarly, the Supreme Court has noted: "The **preservation of business enterprises must not be at the expense of creditors.**" The Court of Appeals for the Fifth Circuit has further explained:

> A principal goal of the reorganization provisions of the Bankruptcy Code is to **benefit the creditors of the Chapter 11 debtor by preserving going-concern values and thereby enhancing the amounts recovered by all creditors** … . However, when there is **no reasonable likelihood that the statutory objective of reorganization can be realized** or when the debtor unreasonably delays, then the **automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interests of creditors**, the intended beneficiaries. In that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of creditors lest the judge keep the Code's word of promise to the ear of creditors and break it to their hope. The bankruptcy judge must meet head-on his obligation to decide, fairly and impartially, the hard questions.[14]

Thus, although a request for relief under section **1112(b)** may bring to the court a variety of difficult choices that might otherwise be left to the negotiating table, this is one of the section's chief virtues. Specifically, it **permits the court to evaluate whether the process is worth the effort, or, conversely, whether the process continues simply because the parties are forced to participate.**

7 Collier on Bankruptcy, ¶ 1112.04 [5][a], [b] (16th 2020) [emphasis added].

As noted above, Debtor Herbert Miller takes exception to, and believes it was improper for, the U.S. Trustee to cite the Ninth Circuit decision *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999), on the issue of cause and good faith because it was in the context of the dismissal or conversion of a Chapter 13 case, not a Chapter 11 case as now before the court.

Debtor Herbert Miller cites to the court the Ninth Circuit decision in *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986), as providing the court with good starting points (and in Debtor Herbert Miller's opinion the ending point) on the consideration of cause and good faith. The first thing that the court notes with respect to *Arnold* is that it is not a decision considering "cause" for purposes of either dismissal or conversion of a Chapter 11 case. Rather, it considered the issue of "cause" and

---

[14] Collier Footnote 55:

> *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 373 (5th Cir. 1987) (en banc), *aff'd*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

"good faith" in connection with granting relief from the automatic stay as provided in 11 U.S.C. § 362(d)(1).

In discussing "cause" as it exists in the world of the automatic stay, the Ninth Circuit Court of Appeals in *Arnold* directs:

> The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay. *See, e.g., In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985) (debtor's dilatory behavior a proper consideration in lifting stay); *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) (lack of good faith constitutes "cause" for lifting stay).

> The existence of **good faith depends on an amalgam of factors and not upon a specific fact**. *Matter of Little Creek Development Co.*, 779 F.2d at 1072. The bankruptcy court **should examine the debtor's** financial status, **motives**, and the local economic environment. *Id.* Said a Ninth Circuit bankruptcy panel:

> > If it is obvious that a **debtor is attempting unreasonably to deter and harass creditors in their *bona fide* efforts** to realize upon their securities, good faith does not exist. But <u>if it is apparent that the purpose **is not to delay or defeat creditors**</u> but <u>rather to put an end to long delays</u>, administration expenses . . . to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] **in the spirit indicated by Congress** in the legislation, namely, to attempt <u>to effect a speedy efficient **reorganization**</u>, on a feasible basis . . . good faith cannot be denied.

> *In re Thirtieth Place, Inc.*, 30 Bankr. 503, 505 (Bankr. App. 9th Cir. 1983) (quoting *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir. 1937)).

*In re Arnold*, 806 F.2d 937, 938, (9th Cir. 1986).

Taking the lead from Debtor Herbert Miller to consider this discussion of good faith and cause by the Ninth Circuit in connection with the automatic stay, it is clear that there must be a good faith in filing to pursue a reorganization of a bankruptcy debtor's assets or business. It is not to be for the purpose to delay or defeat the rights of others.

In *Leavitt*, the court considers the concept of "cause" directly in connection with whether a bankruptcy case should be dismissed in the context of a Chapter 13 case and the non-exclusive factors listed in 11 U.S.C. § 1307(c)(1) through (10). Consistent with the "amalgam of facts" to determine if someone is not acting in good faith in *Arnold*, the court in *Leavitt* states that in considering whether there is bad faith:

> Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the "totality of the circumstances" test. *Eisen*, 14 F.3d at 470. The

bankruptcy court should consider the following factors:

> (1) whether the debtor "misrepresented facts in his [petition or] plan, **unfairly manipulated the Bankruptcy Code**, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner," id. (citing *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir. 1982));
>
> (2) "the debtor's **history of filings and dismissals**," *id.* (citing *In re Nash*, 765 F.2d 1410, 1415 (9th Cir. 1985));
>
> (3) whether "the debtor only **intended to defeat state court litigation**," *id.* (citing *In re Chinichian*, 784 F.2d 1440, 1445-46 (9th Cir. 1986)); and
>
> (4) whether egregious behavior is present, *Tomlin*, 105 F.3d at 937; *In re Bradley*, 38 B.R. 425, 432 (Bankr. C.D. Cal. 1984).
>
> A finding of bad faith **does not require fraudulent intent by the debtor**.
>
> **Neither malice nor actual fraud is required** to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law - **malfeasance is not a prerequisite to bad faith**.

*In re Powers*, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991) (relying *on In re Waldron*, 785 F.2d 936, 941 (8th Cir. 1986)).

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-1225 (9th Cir. 1999) [emphasis added].

The court in *Leavitt* does not offer anything contrary to that in the *Arnold* decision offered up by Debtor Herbert Miller, but complements and is consistent with *Arnold*.

This court begins with there being no business, no financial operation, no assets, and no organization to restructure. Debtor Herbert Miller's prior business endeavors are, in his own words, "defunct." Other than $12,000.00 of exempt cash, Debtor Herbert Miller has nothing but his business mind, sense of financial endeavor, and a new business venture he wants to begin.

What Debtor Herbert Miller clearly shows, and argues to, the court is that there are no assets, business, or finances in the bankruptcy estate to be reorganized. Rather, Debtor Herbert Miller is bolding going forth on new sole proprietorship business ventures, unencumbered by the prior 25+ corporations, limited liability companies, and limited liability partnerships, and the prior sole proprietorship ventures that have failed. There are no assets of the estate identified that would be "reorganized" into some new venture, just Debtor Herbert Miller himself to create something new.

In reality, what Debtor Herbert Miller presents to the court is that he wants to "organize" a new, future sole proprietorship business that he is creating. The projections of income from the new business(es) is not supported by the history of income generated by Debtor Herbert Miller as shown in the 2013 Case, 2017 Case, 2018 Case, and 2019 Case.

As discussed above in Collier on Bankruptcy and the Supreme Court stated policies of Chapter 11 to preserve going concern and maximizing property,[15] there is nothing to preserve in this bankruptcy case. Debtor Herbert Miller has clearly stated that he is filing bankruptcy for something new to be created, not reorganized (as well as using it to try and continue his litigation in federal court through the bankruptcy side door). The court finds nothing persuasive or credible about how or why Chapter 11 is the correct tool for Debtor Herbert Miller to create a new business. If he has creditors and debt weighing him down from the failures of his 25+ prior defunct business ventures, he can again file a Chapter 7 case, get his discharge, and have his fresh start.

**Modification of Rights of Unknown Creditors**

Next, Debtor Herbert Miller comes forward with a "plan" to have a Chapter 11 Plan that modifies the rights and interests of Unknown Creditors and binds them to a 30-year amortization of discounted loan amounts (discounting it to what Debtor Herbert Miller says is the value in the vacuum of there being no creditor to counter) and a simple interest rate of 4.25%. Debtor Herbert Miller offers no legal basis for how he can alter the rights of unidentified people who are purportedly Unknown Creditors and comply with the minimum requirements of Due Process.

Debtor Herbert Miller also presents the court with another unsurmountable obstacle to confirmation - the purported modification of a claim secured only by Debtor Herbert Miller's residence without the consent of the Unknown Creditor.

Class 3.2 Secured Claim has an "unknown creditor" with a claim secured by the 11155 Shadow Court, Auburn, California Property. *Id*. That property is Debtor Herbert Miller's residence. Petition, Question 6; Dckt. 1; Amended Petition, Question 5; Dckt. 37. The treatment of this claim is to modify the terms of the loan, have the court determine the amount of the claim,

---

[15] 7 COLLIER ON BANKRUPTCY, ¶ 1112.04 [5][a], [b] (16th 2020).

and then repay it over 30 years at 4.25%. Absent the consent of the "unknown creditor," such modification is not possible under the Bankruptcy Code and such a plan term could not be confirmed absent such consent. 11 U.S.C. § 1123(b)(5).

**Created Creditors**

Another act by Debtor Herbert Miller in the proposed Chapter 11 Plan that raises the crescendo from not good faith to bad faith is his election to "voluntarily assume" through the Plan $2,500,000.00 on unsecured claims of Created Creditors that he has no legal obligation to pay. He is clear in stating that he has no legal obligation and these are obligations existing between those Created Creditors and others, including some of his 25+ entities that are now defunct.[16]

While someone outside of bankruptcy can elect to give away his or her money or assets (so long as they pay their creditors), a debtor in a Chapter 11 plan cannot give away assets to persons he has no legal obligation to pay, and then leave his actual creditors, to whom he has legal obligations, left unpaid.

While under the proposed plan Debtor Herbert Miller seeks to give away money to the assumed $2,500,000.00 in unsecured claims of the Created Creditors, he provides for his Class 4b general unsecured claims, for which he is legally obligated to pay those creditors, only a 50% dividend and no interest. This "largess" to give away money to people to whom he has no legal obligation and to under pay less than half (taking into account no interest) of what he actually is legally obligated to pay begins moving the needle past mere lack of good faith and into bad faith.

From what Debtor Herbert Miller presents, it appears that he is attempting to manufacture a plan built upon straw men and women – the Unknown Creditors, who cannot vote or oppose the modifications to their legal rights and interests as set forth in the Plan. Then, Debtor Herbert Miller

---

[16] The conduct of a person who owes debts and is unable to pay his creditors in full choosing to give away his assets to others to whom such person has no legal obligation to pay is an anathema under both state and federal law. Cal. Civ. §§ 3439 et seq., Cal. Penal § 154, 11 U.S.C. § 548. In the bankruptcy context, not only are such transfers avoided and recovered for the benefit of the bankruptcy estate, but when recovered the full amount of the transfers are preserved for the benefit of creditors and a debtor cannot even claim an otherwise valid exemption in the transferred property. 11 U.S.C. § 551, § 522(g); *Glass v. Hitt (In re Glass)*, 60 F.3d 565, 569-570 (9th Cir. 1995).

wants to "give" money away to Created Creditors to whom he has no legal obligation and pay less than what he owes to creditors he acknowledges he has a legal obligation to pay. That is not a Chapter 11 plan or reorganization in good faith as permitted under the Bankruptcy Code. In substance, it is a "reorganization" built on ephemeral fraudulent transfers to Created Creditors and modification of the rights and interests of the Unknown Creditors in absentia and without affording them their Due Process rights.

Debtor Herbert Miller is an active, experienced litigator. He may not be successful, but he litigates. He litigates in state court; he litigates in federal court. He litigates in California; he litigates in Arizona; he litigates in Florida.

Rather than a "reorganization" purpose, Debtor Herbert Miller is instead demonstrating a "court shopping" effort and is seeking to obtain an injunction free of complying with the requirements of Federal Rule of Civil Procedure 65 or the state law equivalent. It appears that Debtor Herbert Miller having tried to, and failed, in litigating through the front doors of the state court and the district court, is attempting now to litigate in Federal Court through the side door of the Bankruptcy Court.

At an earlier hearing in this case, the court "helpfully" discussed with the Parties a situation where there was a debtor-creditor dispute concerning a mortgage payment or a foreclosure, and the debtor was using the automatic stay to maintain the *status quo* while the dispute was either resolved consensually or adjudicated. These have been situations where this court has allowed a blocked account to be set up and the bankruptcy debtor to self-fund a bond, using the automatic stay in lieu of having to obtain a preliminary injunction in the related federal or state court lawsuit. Such has been in a case where there is an identified loan and the loan payment is made into the account as an adequate protection payment. 11 U.S.C. § 361. If there is a disagreement as to whether that is reasonable, the court has used the value of the property (generally an amount not in dispute between the bankruptcy debtor and creditor), created a 30-year amortization using an interest rate based on a 100% loan to equity ratio, and had that amount set aside. When the court has done that, either the bankruptcy debtor walks away, not wanting to "fund the bond" (manifesting an intent to litigate only for purposes of delaying the foreclosing creditor or purchaser at the foreclosure sale, and not having

1    a *bona fide* claim to assert) or an agreement is quickly reached between the creditor and debtor (the

2    creditor realizing that there is a debtor who can, is, and will pay on the obligation).

3        Here, Debtor Herbert Miller has proposed using such adequate protection payments.  A

4    review of both Motions for Adequate Protection (Dckts. 156, 161) show that Debtor Herbert Miller's

5    payments are not based on actual fair market value of the property but as explained in the Reply to

6    the Motion for Adequate Protection (Dckt. 183; at 2:25-27) computed based on what he thinks the

7    secured claim would be, and there can be no dispute because the creditors are "unknown."  These

8    are on debts he has not paid for years, for which there appears to have been a decade of litigation,

9    and for which the disputed foreclosure sales occurred two to three years prior to the commencement

10    of Debtor Herbert Miller's 2020 Case.

11        In considering the extensive litigation experience of Debtor Herbert Miller and the continuing

12    battles, the court is convinced that there can be no "bankruptcy adequate protection" fund in this

13    situation where Debtor Herbert Miller adamantly states that the foreclosure deeds are void and the

14    persons whose rights he is attacking have no interest in the property and no right to be paid.

15        In the context of Debtor Herbert Miller's litigation over the foreclosures, this court is further

16    convinced that the Supreme Court has set the proper rules for whether a person's asserted rights in

17    real property should be enjoined in Federal Rule of Civil Procedure 65 and Federal Rule of

18    Bankruptcy Procedure 7065.  The automatic stay provisions of 11 U.S.C. § 362(a) created by

19    Congress are to moderate the debtor-creditor relationship and protect property of the bankruptcy

20    estate from further creditor action.  The automatic stay is not a "for free" litigation injunction to

21    override Federal Rule of Civil Procedure 65 under these circumstances.

22        Debtor Herbert Miller has, can, and likely will continue to press his rights in the California

23    Superior Court and the Eastern District of California District Court.  However, doing so has nothing

24    to do with any reorganization under Chapter 11.  Debtor Herbert Miller has nothing to reorganize.

25    He is only looking to create new businesses based on his financial acumen and future sweat equity.

26    Chapter 11 is not a statutory scheme to "reorganize" future businesses.

27        The court concludes that the use of 28 U.S.C. § 1334 for purposes of the non-bankruptcy

28    litigation under the circumstances as Debtor Herbert Miller presents is an abuse of the federal

jurisdiction granted thereunder. The creation of federal court jurisdiction (based on the U.S. Constitution Article I, § 8, Clause 4 granting Congress the power to create a uniform national law) for cases arising under the Bankruptcy Code, arising in the bankruptcy case, and related to the bankruptcy case, is the exception to the normal limited federal jurisdiction found in Article III of the U.S. Constitution.

Non-bankruptcy, non-federal law issues flood the bankruptcy courts because they arise in the bankruptcy case (such as claim objections) or relate to the bankruptcy case (determination of zoning ordinances, property rights, and the like). Such is a necessary and proper exercise of federal jurisdiction granted by Congress to make the Bankruptcy Code work for debtors and creditors. However, it is not a device or artifice to circumvent the U.S. Constitution and slip non-bankruptcy related matters into federal court.

For Debtor Herbert Miller, there is no bankruptcy reorganization to take place, but only the litigation of the non-bankruptcy issues he desires to pursue over the alleged void foreclosure deeds.

Further, Congress provides in 28 U.S.C. § 1334 that the federal court may abstain from exercising federal court jurisdiction from hearing a particular proceeding arising under title 11 (the Bankruptcy Code) or arising in or related to a case under title 11. 28 U.S.C. § 1334(c)(1). The adversary proceedings in which Debtor Herbert Miller seeks to have the foreclosure deeds determined void and assert other affirmative rights against the various defendants appear to be tailor made for the federal bankruptcy court judge (who is a judicial officer of the district court, 28 U.S.C. § 151) to abstain and allow Debtor Herbert Miller to take his fight to the California Superior Court or to the United States District Court, if some federal jurisdictional basis exists other than through the 28 U.S.C. § 1334 side door.[17]

**Conversion or Dismissal of Case**

As 11 U.S.C. § 1112(b)(1) provides, upon determining that cause exists, the court shall either dismiss or convert the case, "whichever is in the best interests of the creditors and the estate." In the Motion, the U.S. Trustee requests that the case be dismissed. The Motion and Points and

---

[17] Congress provided in 28 U.S.C. § 1334(d) that a decision to abstain under § 1334(c)(1) is not reviewable by appeal or otherwise.

Authorities do not flesh out the basis for dismissal rather than conversion. No supporting pleadings have been filed by any other parties in interest.

The considerations taken into account in determining whether conversion or dismissal is in the best interests of the creditors and bankruptcy estate is discussed in Collier on Bankruptcy:

> If the parties disagree on conversion, dismissal or appointment of trustee or examiner, the court should evaluate and choose the alternative that would be most advantageous to the parties and the estate as a whole. In doing so, the court may consider such factors as
>
> > (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal,
> >
> > (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted,
> >
> > (3) whether the debtor would simply file a further case upon dismissal,
> >
> > (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors,
> >
> > (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise,
> >
> > (6) whether any remaining issues would be better resolved outside the bankruptcy forum,
> >
> > (7) whether the estate consists of a "single asset,"
> >
> > (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests,
> >
> > (9) whether a plan has been confirmed and whether any property remains in the estate to be administered  and
> >
> > (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.
>
> In addition, the court should make its decision with due regard to the effect of dismissal under section 349.

7 Collier on Bankruptcy P 1112.04 (16th 2020), with the court restructuring the form of the paragraph to list the ten items therein separately for ease of reading.

The court concludes that dismissal is in the best interests of the bankruptcy estate and creditors in that there appears to be no assets to be administered by a Chapter 7 trustee. There are no free assets (such as cash or property to be sold to generate cash) to fund the administration of the

bankruptcy estate.  Debtor Herbert Miller has three, what appear to be, highly contested lawsuits challenging the validity of three foreclosure deeds.  Debtor Herbert Miller appears to have been actively attempting to litigate those issues in state court, and federal court when removed thereto.  While a Chapter 7 trustee could litigate, settle, or abandon such claims and property, he or she would not only be starting without assets for such litigation, but encumbered by the rulings and orders in various prior actions prosecuted by Debtor Herbert Miller.

On Amended Schedule A/B, Debtor Herbert Miller does list other claims against third parties he states existed as of the commencement of the 2020 Case.  Dckt. 79 at 21.  These are identified as additional wrongful foreclosure cases relating to properties in Scottsdale, Arizona (2 such claims), and one in Cave Creek, Arizona.  Again, a Chapter 7 trustee would begin "asset naked" to consider these multiple, multi-state listed claims to try and acquire some tangible assets.

The court concludes that dismissal, rather than conversion, is in the best interest of the bankruptcy estate and creditors.  With the dismissal, Debtor Herbert Miller is freed to not only pursue his new business ventures, but also whatever litigation he believes proper concerning his allegations of void foreclosure deeds and other claims, rather than all of those claims, rights, and interests being under the sole control of a Chapter 7 trustee.  11 U.S.C. § 704.  Creditors will then have Debtor Herbert Miller generating projected substantial income from his new business venture(s), which would appear to have the potential (as projected) to generate monies to substantially pay his creditors to whom he is legally obligated.

The Motion is granted and the Chapter 11 case is dismissed.

## IMPOSITION OF BAR ON FILING
## ANOTHER BANKRUPTCY CASE

The U.S. Trustee also requests that the court impose a one-year bar on Debtor Herbert Miller filing another bankruptcy case.  One basis for such a bar is stated in 11 U.S.C. § 349(a), which provides (emphasis added):

§ 349. Effect of dismissal

(a) **Unless the court, for cause, orders otherwise**, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; **nor does the dismissal of a case** under this title

**prejudice the debtor with regard to the filing of a subsequent petition** under this title, except as provided in section 109(g) of this title.[18]

The court cannot identify an "order" of this court that has not been complied with for purposes of imposing an 11 U.S.C. § 109(g) 180-day bar on filing a new case by Debtor Herbert Miller.

This court has previously addressed the issue of imposing a bar on a debtor filing further cases for a specified period of time. The bankruptcy courts are established by an act of Congress and the All Writs Act, 28 U.S.C. § 1651(a), and 11 U.S.C. §105 provide the bankruptcy courts with the inherent power to enter pre-filing orders against vexatious litigants. *Molski v. Evergreen Dynasty Corp, et al*, 500 F.3d 1047 (9th Cir. 2007); *Gooding v Reid, Murdock & Co.*, 177 F 684, (7th Cir 1910), *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1197 (9th Cir. 1999), and *In re Bialac*, 15 B.R. 901, 9th Cir. B.A.P. 1981), *aff'd* 694 F.2d 625 (9th Cir. 1982). A court must be able to regulate and provide for the proper filing and prosecuting of proceedings before it. 11 U.S.C. §105(a) expressly grants the court the power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Further, the court is authorized to *sua sponte* (in the case now before the court the U.S. Trustee has in this Motion requested the relief in the form of a bar on filing another bankruptcy case) take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. This power exists, and it does not matter whether it is being exercised pursuant to 11 U.S.C. §105 or the inherent power of the court. *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 2007); and *Peugeot v. U.S. Trustee (In re Crayton)*, 192 B.R. 970, 976 (9th Cir. B.A.P. 1996).

The Ninth Circuit Court of Appeals re-stated the grounds and methodology for pre-filing

---

[18]  11 U.S.C. § 109(g)(1) provides in pertinent part:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; . . . .

review requirements as an appropriate method for the federal courts in effectively managing serial filers or vexatious litigants. *Molski v. Evergreen Dynasty Corp, et al*, 500 F.3d 1047 (9th Cir. 2007), *en banc* hearing denied, 521 F.3d 1215 (9th Cir. 2008); and *In re Fillbach*, 223 F.3d 1089 (9th Cir. 2000). While maintaining the free and open access to the courts, it is also necessary to have that access be properly utilized and not abused. The abusive filing of bankruptcy petitions, motions, and adversary proceedings for purposes other than as allowed by law diminishes the quality of and respect for the judicial system and laws of this country.

As addressed by the Ninth Circuit Court of Appeals in *Molski*, the ordering of a pre-filing review requirement is not to be entered with undue haste because such orders can tread on a litigant's due process right of access to the courts. As discussed in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), the right to seek redress from the court is a protected right of civil litigants. The issuing of a pre-filing order is to be made only after a cautious review of the pertinent circumstances.

However, the Ninth Circuit Court of Appeals clearly draws the line that a person's right to present claims and assert rights before the federal courts is not a license to abuse the judicial process and treat the courts merely as a tool to abuse others.

> Nevertheless, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long, 912 F.2d at 1148*; *see O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir. 1990)*.

*Molski,* 500 F.3d at 1057. In the Ninth Circuit the trial courts apply a four factor analysis in determining if and what type of pre-filing or other order should properly be issued based on the conduct of the party at issue.

1.  First, the litigant must be given notice and a chance to be heard before the order is entered.

2.  Second, the district court must compile "an adequate record for review."

3.  Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation.

4.  Finally, the vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered."

1    *Id.*

2         Here, the U.S. Trustee asserts that Debtor Herbert Miller has "acted egregiously and in bad

3    faith." Points & Authorities, p. 20:19-20; Dckt. 112. With respect to Debtor Herbert Miller's filing

4    and prosecution of bankruptcy cases, the grounds stated by the U.S. Trustee include:

5
6         A.    This is Debtor Herbert Miller's fourth "reorganization" case, with there not being a
               confirmed plan in the prior three cases, all of which have been dismissed. *Id.*, ¶¶ 19,
               61.
7
8         B.    Debtor Herbert Miller has demonstrated that bankruptcy is a "mere tool" to be used
               in negotiations with mortgage holders. *Id.*

9         C.    The valuable assets listed on the Schedules are the three properties for which Debtor
               Herbert Miller asserts the foreclosure deeds are void and seeks to continue in such
10              litigation. *Id.*, ¶¶ 27, 62.

11        D.    Debtor Herbert Miller's Schedules were grossly inaccurate (not disclosing his various
               corporations, limited liability companies, and limited partnership interests). *Id.*, ¶ 2.
12              (Amended Schedules and Statement of Financial Affairs were filed in this case.)

13        E.    Debtor Herbert Miller's Schedule J budget did not state realistic expenses, and did
               not include amounts for rent, mortgage payments, property taxes, or insurance for the
14              real property he asserts he owns. *Id.*, ¶ 15-17.

15        F.    The present case has been filed in bad faith. Factors asserted by the U.S. Trustee
               include: (1) inaccurate schedules, (2) this is Debtor Herbert Miller's fourth
16              "reorganization" case since 2013, with the prior three dismissed; and (3) Debtor
               Herbert Miller uses the filing of bankruptcy to "negotiate" and not to reorganize. *Id.*,
17              ¶¶ 55-56, 57, 61.

18        Debtor Herbert Miller opposes this request, stating that "the UST has articulated a very

19    distorted narrative of the action facts, and in at least one instance has made an outright false

20    allegation of a 'misrepresentation' by Debtor [Herbert Miller]. . . ." Opposition, p. 5:21-22;

21    Dckt. 126. Debtor Herbert Miller states that he is not a "serial filer," and the present case is merely

22    "an extension" of the two prior dismissed cases.

23        With respect to the bankruptcy cases for various entities in which Debtor Herbert Miller has

24    an interest, it is explained that they were being filed by "loose cannons" without Debtor Herbert

25    Miller's knowledge.

26        In considering this issue, the court has the benefit of not only throughly reviewing what

27    Debtor Herbert Miller says he wants to do, but see the actual "Plan" of what he intends to do. The

28    court has, as addressed above, put that in the framework of Chapter 11 and the Bankruptcy Code.

At this juncture, the court notes that Debtor Herbert Miller's attorney explained to the court at the final oral argument that the Chapter 11 Plan filed was not the "final version," and such plans are always subject to amendment or modification to get to the "real plan terms." The court agrees that the first Chapter 11 plan filed is not usually the first and final version (unless it is a "Pre-Packaged" Chapter 11 where the creditors and to-be debtor have written and "voted" on the plan in advance).

However, even the first version of the Chapter 11 plan filed needs to be consistent with the law and provide colorable, confirmable (even if it is not anticipated that creditors will vote for it) terms. As the court addressed above, what Debtor Herbert Miller presented to the court was a "plan" by which Unknown Creditors would have their rights modified without notice or hearing. Further, that such Unknown Creditor with the lien on Debtor Henry Miller's residence would have its rights modified notwithstanding the Bankruptcy Code prohibiting such modification, even if the creditor had notice and was a party to the bankruptcy case, without that creditor's consent.

Then, Debtor Herbert Miller seeks to "assume" almost $3,000,000.00 of debt, for which he affirmatively states he has no personal liability. Then, having "assumed" millions of dollars of this no personal liability debt for the Created Creditors, Debtor Herbert Miller seeks to divert post-petition plan payments to those Created Creditors. In diverting the money to the Created Creditors, he will then not pay in full his actual creditors, to which he is legally obligated to pay their claims. There is no basis for floating a Created Creditor plan in good faith.

Further, there is nothing in the bankruptcy estate to reorganize. All of Debtor Herbert Miller's prior business ventures are, in his words, defunct. He is launching out on new business ventures, but they are not based on any existing businesses or assets to be reorganized.

What Debtor Herbert Miller has demonstrated is that the filing of this bankruptcy case was a mere canard to invoke federal court jurisdiction pursuant to 11 U.S.C. § 1334, slip in the side door to federal court, and then use the automatic stay instead of properly seeking a preliminary injunction to assert his contentions that the foreclosure deeds are void. While using federal court jurisdiction arising pursuant to 11 U.S.C. § 1334 is proper when the matter is related to a bankruptcy case, the bankruptcy case cannot exist solely to justify the side door access to federal court. There is no

1  reorganization to take place in the Chapter 11 case.

2  The court is legitimately concerned that if this case is just dismissed, with no buffer, Debtor

3  Herbert Miller will just yo-yo back into another bankruptcy case to try and avoid having to prosecute

4  his claims relating to the alleged void foreclosure deeds in state court or district court (if a grounds

5  for federal court jurisdiction exists).  Such thoughtless filing of bankruptcy cases as a device to

6  forum shop wastes a debtor's valuable rights under the Bankruptcy Code.

7  The court has weighed the options, ranging from just dismissing the current case, as it has

8  done for the three prior cases, to imposing the one-year (or greater) bar on Debtor Herbert Miller

9  filing a bankruptcy case as requested by the U.S. Trustee.  Clearly, some limits need to be placed on

10  Debtor Herbert Miller to prevent the abuse and attempted abuse of the bankruptcy court, federal

11  court jurisdiction, bankruptcy laws, state court judgments, and third-parties.

12  The court will not bar Debtor Herbert Miller from ever filing another bankruptcy case, but

13  will impose the much more moderate requirement that he first obtain the pre-filing authorization

14  from the chief judge in the bankruptcy district before commencing another bankruptcy case during

15  the one hundred and eighty (180) day period following the dismissal of this case.  The court selects

16  a one hundred and eighty (180) day period after considering the filings, what has been presented in

17  this case, and the "plan" with Created Creditors, Unknown Creditors whose rights are purported to

18  be modified, and no reorganization of anything in the bankruptcy estate.

19  A pre-filing review requirement is of little impact to a debtor seeking legitimate relief from

20  the bankruptcy court.  In this case, it will require the debtor to have the initial bankruptcy pleadings

21  completed and on their face appear to be consistent with the requirements of the Bankruptcy Code

22  and Chapter under which Debtor Herbert Miller seeks to file bankruptcy.  Such should be simple in

23  light of the Amended Schedules and Statement of Financial affairs in the current fourth bankruptcy

24  "reorganization."  It imposes no significant cost or delay, in that the petition, schedules, and other

25  basic pleadings need to be prepared at the time of filing.

26  It is likely that Debtor Herbert Miller can have his plan drafted (if he desires to file a

27  Chapter 11 case) and it can be presented as an exhibit in support of the motion for authorization to

28  file the bankruptcy case during the one hundred eighty (180) day period.  If a draft of the plan is not

available, Debtor Herbert Miller can provide a detailed summary of the plan terms. In addition, an explanation as to what actions will be taken to identify the creditors on these obligations that have been the subject of long standing, ongoing disputes.

If filed in this District, the Application for Authorization to file a bankruptcy case within one hundred and eighty (180) day bar period shall be filed in this 2020 Case, with no reopening fee required to be paid. It shall be reviewed and ruled on by the current judge in the 2020 Case, who is continuing to serve as the Chief Bankruptcy Judge in this District during the one hundred eighty (180) day pre-filing review bar period.

The court shall enter a separate order dismissing this case and imposing the one hundred eighty (180) day bar on filing another bankruptcy case and the pre-filing review requirement during that period.

**Dated:** November 16, 2020                    **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

**End Notes**

1. In his Declaration, Debtor Herbert Miller testifies that with respect to the Hillside Holdings, Inc. bankruptcy case, "he may have" (apparently filed it). Declaration, ¶6, p. 2:25; Dckt. 127. He states that as he recalls, the Hillside Holdings, Inc. bankruptcy case would have been filed to reorganize a condominium project in Las Vegas Nevada. *Id.* He believes that the case filed in California would have been quickly dismissed and the case refiled in Nevada. *Id.*

A review of this court's files, the only bankruptcy case filed for Hillside Holdings, Inc. (or any entity with the words "Hillside Holdings" in its name) is Case No. 18-20298 above. A search using PACER of the files for the U.S. Bankruptcy Court for the District of Nevada reveals that there is no bankruptcy case of record for an entity with the words "Hillside Holdings" in its name.   https://ecf.nvb.uscourts.gov/cgi-bin/iquery.pl?104066502821794-L_1_0-1.

The California Secretary of State maintains a website at which persons can inquire about entities registered to do business in California. A search of that website for a corporation with the words "Hillside Holdings" in its name yields the information about: Hillside Holdings, Inc., registered as a corporation in 2004, whose address is 7119 W Sunset Blvd #192, Los Angeles, California.  https://businesssearch.sos.ca.gov/CBS/Detail.

Reviewing the information available on the Secretary of State website and the Corporate

47

Statements of Information available thereon does not include any information relating to a "Hillside Holdings, Inc." with an address at 11155 Shadow Court, Auburn, California.

This information from the Secretary of State's website is not evidence presented in connection with the motion and not considered by the court in its ruling. However, it is information that is relevant in connection with the filing of the Hillside Holdings, Inc. bankruptcy case in this court. If someone were filing a bankruptcy case for a non-existent corporation, they might also be falsely appearing in court identifying themselves as "Herb Miller."

The person identifying himself as "Herb Miller" on the recording for the dismissal hearing in the Hillside Holdings, Inc. case filed in this court stated that the attorneys hired to represent the corporate debtor was "Parker Stanbury" firm here in town. To the extent that somebody was misrepresenting himself to be "Herb Miller," it is likely that the attorneys at Parker Stanbury could assist the U.S. Trustee in identifying such person.

It causes the court concern that what appears to be a non-existent entity may have been the "debtor" in the Hillside Holdings, Inc. case filed in this court. The court refers this information to the U.S. Trustee for such further review, investigation, and action as the U.S. Trustee or others at the Department of Justice deem appropriate. The court makes no referral for any specific action, but leaves such action, if any, as determined to be warranted to the U.S. Trustee and Department of Justice.

# Instructions to Clerk of Court

**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Attn: Jason Blumberg, Esq.<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | |